IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRI L. UREY,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | **NO. 08-5346** |
| | : | |
| **EAST HEMPFIELD TOWNSHIP,** | : | |
| **et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                  March 3, 2009

This is an employment discrimination action brought by Terri L. Urey against East Hempfield Township, East Hempfield Police Department,[1] and Police Chief Douglas Bagnoli under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,[2] and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §951, *et seq.*[3] The defendants have

---

[1] In their motion to dismiss, the defendants correctly argue that the East Hempfield Police Department is not a legal entity separate and apart from East Hempfield Township; it is not a political entity; and it is simply a department of East Hempfield Township. In her response, the plaintiff concedes that the police department should not be named as a defendant in this case. Accordingly, I will dismiss the East Hempfield Police Department as a defendant. Any action alleged to have been taken by the police department shall be imputed to East Hempfield Township.

[2] Under 42 U.S.C. § 2000e-2(a)(1): it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

[3] The PHRA provides "the opportunity for an individual to obtain employment for which she is qualified without discrimination because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, national origin." Courts interpret the PHRA consistently with Title VII. Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001) (The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as

(continued...)

moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I will deny the motion in part and grant the motion in part.

## I. BACKGROUND

In May 1991, Miss Urey began her employment with East Hempfield Township assigned to work as a police officer for the township's police department. Her complaint alleges that she arrested a driver known as "Roop" in August 2004 for driving under the influence of alcohol or a controlled substance. Compl. ¶ 9. Roop pled guilty and entered an "ARD program." Id. ¶ 10.

In November 2004, Miss Urey also investigated another drunk driving case involving an individual known as "Dougherty" for which she did not file a criminal complaint. Id. ¶ 12.

On February 28, 2005, Miss Urey sustained a work-related back injury. Id. ¶ 13. She was examined by Dr. Tyman, a police department-approved physician from the Lancaster Orthopedic Group. Id. ¶ 15. At that appointment, Miss Urey requested a medical excuse from Dr. Tyman for her absence. Id. ¶ 16. She then began a medical leave of absence which was scheduled to end on July 14, 2005. Id. ¶ 18. During her absence, the police department filed criminal charges against Dougherty for DUI. Id. ¶ 19.

---

³(...continued)
Pennsylvania courts have construed the protections of the two acts interchangeably).

On July 8, 2005, again during her leave of absence, Miss Urey was notified by Defendant Bagnoli that she was discharged for violating work rules, specifically based on her failure to: (1) obtain search warrants to secure blood alcohol content results for Dougherty and Roop; (2) file a criminal complaint against Dougherty; and (3) provide a medical excuse for certain days of work missed. Id. ¶¶ 20-21. The complaint alleges that the police department had no rules requiring an officer to file charges within a specified period of time other than the statute of limitations, or for requiring an officer to seek a blood test for a defendant such as Roop. Id. ¶ 22. Miss Urey also alleges that male police officers at the department received preferential treatment after committing various violations of the rules and were not terminated. Id. ¶¶ 24-29. For example, a male officer was not terminated after it was determined that he had had a sexual relationship with a defendant whom he had arrested for DUI. Id. ¶ 24. Two other male officers were not disciplined even though they had fallen asleep during the surveillance of two (2) armed homicide suspects. Id. ¶¶ 26-27. A male police lieutenant failed to obtain proper blood samples during the investigation of an accident where the Chief of Police in Lititz was killed. Id. ¶ 28. The chief's family filed a law suit against East Hempfield because the lieutenant's mistake resulted in the chief's family being denied survivor death benefits. Id. ¶ 29. While not explicitly stated in the complaint, it is assumed that the lieutenant was not terminated from his employment despite his violation of the rules.

The complaint also alleges that Miss Urey filed a grievance through her collective

bargaining representative challenging her termination. Id. ¶ 43. During arbitration of the grievance, Miss Urey presented evidence including the alleged preferential treatment of the male officers. Id. ¶¶ 44-45. The Township then presented the testimony of Miss Urey's platoon leader who said that he did not want to work with Miss Urey and that he wanted her removed from his platoon. Id. ¶ 46. On March 20, 2007, the arbitrator ordered the police department to reinstate Miss Urey as a police officer. Id. ¶ 47. The complaint alleges that Defendant Bagnoli intentionally delayed the reinstatement until October 26, 2007, and that he assigned Miss Urey to her previous platoon. Id. ¶¶ 48-49. Miss Urey also alleges that Defendant Bagnoli opened her personal mail without authorization. Id. ¶ 53. It is further alleged that in December 2007, Defendant Bagnoli engaged in an elaborate process of transfers and assigned Miss Urey to the platoon of one of the male officers who had allegedly received preferential treatment. Id. ¶ 50. Miss Urey characterizes this transfer as retaliatory because it subjected her to a hostile work environment, and made it difficult for her to be promoted, and to receive approval for vacations. Id. ¶¶ 50-52.

## II. STANDARD FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 555. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

Miss Urey filed a three-count complaint against the defendants. The first count alleges gender-based employment discrimination against East Hempfield Township and

East Hempfield Police Department pursuant to Title VII and the PHRA. The second count alleges gender-based employment discrimination against Chief Bagnoli solely under the PHRA. The third count brings a 42 U.S.C. § 1983 claim against Defendant Bagnoli alleging a violation of Miss Urey's rights under the First Amendment of the U.S. Constitution.

A. **Exhaustion of Administrative Remedies**

The defendants first argue that Counts I and II should be dismissed because Miss Urey failed to exhaust her administrative remedies. Specifically, they contend that because Miss Urey only named the East Hempfield Police Department as a respondent in her Charge of Discrimination, she has failed to exhaust her administrative remedies as to East Hempfield Township and Chief Bagnoli. I disagree.

Generally, an employee must exhaust all administrative remedies by filing a Charge of Discrimination with the appropriate state or federal agency before filing suit under Title VII or the PHRA. Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). Title VII and/or PHRA claims may only be brought against a party named as a "respondent" in the administrative action. Schafer v. Board of Public Education of School District of Pittsburgh, 903 F.2d 243, 252 (3d Cir. 1990); 42 U.S.C. §2000e-5(f)(1). The purpose of this rule is to alert the implicated parties and to encourage an informal conciliation process in lieu of trial. Kunwar v. Simco, et al., 135 F.Supp.2d 649, 653 (E.D. Pa. 2001). However, the Court of Appeals for the Third Circuit has recognized an

exception to the exhaustion requirement under certain circumstances, and has permitted a plaintiff to sue a party not specifically named in the administrative Charge "when the unnamed party received notice and when there is a shared commonality of interest with the named party." Schafer, 903 F.2d at 252; see also Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980) (stating four-part test[4] for exception to exhaustion requirement), *vacated on other grounds,* 451 U.S. 935 (1981). District courts have applied this exception in a variety of situations to permit suits to go forward, notwithstanding imperfect exhaustion. In particular, several district courts in our circuit have found plaintiffs to have exhausted administrative remedies with respect to individual defendants if the body of the EEOC and/or PHRA complaint at issue named the defendants and described the particular acts of discrimination committed by the individual defendants. See Huggins v. Coatesville Area School District, 2008 U.S. Dist. LEXIS 65604 (E.D. Pa. 2008) (the court found that although the plaintiff failed to name the school principal as a

---

[4] In Glus, the Court of Appeals set forth four factors courts should consider in determining whether a party that the plaintiff did not expressly name in a PHRA or EEOC Charge can nonetheless be named as a party in the subsequent civil suit. Glus, 562 F.2d at 887-888. The Glus factors are: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the PHRA or the EEOC complaints; (2) whether under the circumstances, the interests of a named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the PHRA and/or EEOC proceedings; (3) whether its absence from the PHRA and/or EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. Id. In Schafer, the Court of Appeals for the Third Circuit reaffirmed the Glus four-factor test. Schafer, 903 F.2d at 252.

respondent in the Charge, there was sufficient reference to the principal and his alleged misconduct in the Charge to satisfy the exhaustion requirement); Kunwar, 135 F. Supp. at 653-654 (finding that individual defendants were sufficiently put on notice because plaintiff's EEOC charges specifically referred to the individual defendants); Cardamone v. Murray Mgmt., 2005 U.S. Dist. LEXIS 40065, at *6-7 (M.D. Pa. 2005) (same); Glickstein v. Neshaminy Sch. Dist., 1999 U.S. Dist. LEXIS 727, at *6 (E.D. Pa. 1999) (same); Dreisbach v. Cummins Diesel Engines, 848 F. Supp. 593, 597 (E.D. Pa. 1994) (same); Kinnally v. Bell of Pennsylvania, 748 F. Supp. 1136, 1140 (E.D. Pa. 1990) (same); but see Hajzus v. Peters Twp. Sch. Dist., 2007 U.S. Dist. LEXIS 20917, at *8-10 (W.D. Pa. 2007) (dismissing allegations against individual defendants where the plaintiff's PHRA complaint did not name those defendants as respondents to the administrative action, or contain allegations that the individual defendants aided and abetted in any discriminatory acts); Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985) (in applying the Glus factors, the court concluded that a union and an employer did not have the requisite identity of interests where the employee only named the employer in the Charge).

Here, consideration of the Glus factors weighs in favor of a finding that Miss Urey has exhausted her administrative remedies regarding the Township. Although the defendants are correct that the Township was not a named respondent during the administrative process, it nevertheless is undisputed that the East Hempfield Police

Department, the sole named respondent here, is a department or subunit of East Hempfield Township. Under these circumstances, the interests of the police department are so similar to those of the Township that for the purpose of obtaining voluntary conciliation and compliance it was unnecessary to include the Township as a respondent during the administrative process. A finding against the police department would create a liability for the Township. Moreover, the police department filed an answer to the administrative Charge and was represented by agents of the Township. See Pl. Resp. Ex. B. East Hempfield Township did not attempt to distinguish itself from its police department for purposes of investigating and adjudicating the Charge brought by Miss Urey. I also note that East Hempfield Township is now asserting in its motion to dismiss that its police department cannot employ personnel, yet it represented to the PHRC and EEOC that its police department had hired Miss Urey in May 1991. In fact, the police department responded with an admission when Miss Urey identified it as the respondent in her Charge. Id. When Miss Urey alleged in her Charge that the police department had hired her on May 28, 1991, the respondent again responded with an admission. Id. The East Hempfield Township Police Department and East Hempfield Township were one and the same for purposes of identifying a respondent and participation in the administrative proceedings. Accordingly, because the Township received notice and shared a commonality of interest with its police department, I will deny the defendants' motion to dismiss the Township as a defendant in Count I. Schafer, 903 F.2d at 252.

In determining whether the plaintiff should have named Chief Bagnoli as a defendant in Count II, however, it cannot be said that the police department and its chief share a commonality of interests sufficient to make the <u>Glus</u> exception apply. Miss Urey failed to name Chief Bagnoli as a respondent in her administrative Charge. She also failed to make any specific allegations against him in the Charge, other than that he communicated her termination from employment to her. See Def. Ex. A, ¶ 8. There is nothing inherent to a supervisor's role that would automatically implicate him in an employee's discrimination claims against her employer. <u>Kunwar</u>, 135 F.Supp.2d at 654. Chief Bagnoli was not given the opportunity to correct the alleged discrimination or to encourage an informal conciliation process. Not being named a respondent in the administrative process deprived Chief Bagnoli of the requisite notice, and resulted in substantial prejudice to him now. Accordingly, I cannot conclude that Chief Bagnoli was on notice of the proceedings or otherwise had any reason to believe that he was an adverse party. I will grant the defendants' motion to dismiss Count II on the grounds of failure to exhaust administrative remedies.

### B. Count III

In Count III, Miss Urey alleges, *inter alia*:

> 50. On [sic] December 2007, Defendant Bagnoli engaged in an elaborate process of transfers and assigned the Plaintiff to Eberly's platoon, **subjecting her to a hostile work environment**, rather than placing her under the only platoon leader, Sergeant Brian Nice, who had no animosity toward the plaintiff.

> 51. ***The transfer was retaliatory*** in that it virtually eliminated the opportunity for the plaintiff to serve as Officer in Charge, with the accompanying Sergeant's pay and requisite experience for a promotion to Sergeant.

See Compl. ¶¶ 50, 51 (emphasis added). The defendants understandably seek to clarify under what theory of law this count is based. Miss Urey alleges that "the employment practices, as specified hereinbefore, constituted ***reprisal, created a hostile environment***, and constituted a violation of the First Amendment of the United States Constitution and 42 U.S.C. § 1983." See Compl. ¶ 54 (emphasis added). At first blush, it would appear that the count included both a First Amendment violation and violations of Title VII and/or the PHRA.[5] In her response to this motion, however, Miss Urey clarifies that Count III sets forth only a § 1983 claim alleging a violation of her First Amendment rights, and that the retaliation alleged included the creation of a hostile work environment. Title 42 of the United States Code § 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance,

---

[5] I note that if this count had included allegations of violations of Title VII and/or the PHRA, they would have been dismissed for failure to exhaust administrative remedies. Miss Urey did not include allegations of retaliation or hostile work environment in her administrative Charge. In fact, the defendant correctly points out that the administrative Charge was filed long before the alleged retaliation and hostile work environment took place. A supplemental Charge should have been filed to include those allegations if Miss Urey wanted to include them here.

> regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, in evaluating § 1983 claims against municipal actors, the Supreme Court has set forth two threshold inquiries: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (same); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995).

In suits against municipal employees who act in a supervisory capacity, the Supreme Court has differentiated between claims against those individuals in their personal (individual) capacities and their official capacities. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Personal capacity suits seek to impose liability on government officials for acts performed under color of law. Id. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Id. (quoting Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 690, n. 55 (1978)).

Here, Miss Urey indicates that Defendant Bagnoli is being sued in his individual capacity. See Compl. ¶ 7. An official sued under § 1983 in a personal capacity action can be held liable if he acted under color of law to deprive a person of a federal right. See Hafer v. Melo, 502 U.S. 21, 27 (1991); Powell v. Ridge, 189 F.3d 387, 401 (3d Cir. 1999); Graham, 473 U.S. at 166. The Third Circuit has expressly applied the standards for municipality liability for § 1983 violations to cases alleging individual liability. See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) ("…the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve. In either case, a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' – whether a natural one or a municipality – has exhibited deliberate indifference to the plight of the person deprived") (internal citations omitted)); see also Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001).

There are two theories of supervisory liability under which a plaintiff can sue a municipal defendant in a personal capacity action. See A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 578 (3d. Cir. 2004). Under the first theory, defendants can be sued as policy-makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy,[6] custom,[7] or practice which

---

[6] A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers." Monell, 436 U.S. at 690; see also Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is
(continued...)

directly caused [the] constitutional harm.'" Id. (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). The second theory provides for personal liability if plaintiffs can show that a supervisor "participated in violating their rights, or that he directed others to violate them, or that he…had knowledge of and acquiesced in his subordinates' violations." Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). There is no liability for personal capacity actions based only on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Monell, 436 U.S. at 693.

Thus, for Miss Urey to be successful in the personal capacity claim against Chief Bagnoli, she will have to show: (1) that the chief was a policy-maker in East Hempfield Township who established or maintained policies, customs, or practices which directly caused the constitutional harm to the plaintiff, and that he did so with deliberate indifference to the consequences; or (2) that the chief personally participated in violating

---

⁶(...continued)
made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.") (citation omitted). Such a policy "generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). Limiting liability to identifiable policies ensures that municipalities are only liable for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Brown, 520 U.S. at 403-04.

⁷ A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404. This requirement should not be construed so broadly as to circumvent Monell: "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy..." Tuttle, 471 U.S. at 823-824.

the constitutional rights of Miss Urey, or directed others to violate those rights, or had knowledge of and acquiesced in the violations of his subordinates. It appears that Miss Urey is alleging liability based on the second prong.

The defendants also argue that Count III is deficient because it does not conform with Rules 8 and 10 of the Federal Rules of Civil Procedure. I disagree. Under Rule 8, a plaintiff is required to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10 requires separate claims to be stated in a separate count.[8] Under our notice pleading standards, although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Twombly, 550 U.S. at 555. This does not impose a probability requirement at the pleading stage, but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To prevail on a § 1983 claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) she engaged in a protected activity; (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising her rights; and (3) a causal connection existed between the protected activity and the adverse

---

[8] Because it has been determined that Count III contains only one cause of action, Rule 10 is not implicated here.

action. Schlegel v. Koteski, 2009 U.S. App. LEXIS 1083, at *11-12 (3d Cir. Jan. 20, 2009) (citing Lauren W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007)). Causation may be proved in various ways. A showing of "unusually suggestive" temporal proximity between the protected activity and the adverse action can be sufficient. Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 369 (3d Cir. 2008). A plaintiff also can prove causation, despite a lack of suspicious temporal proximity, by coming forward with evidence of a pattern of antagonistic conduct against the plaintiff subsequent to her protected conduct. Schlegel v. Koteski, 2009 U.S. App. LEXIS 1083, at *11-12 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920-921 (3d Cir. 1997)). Lastly, the plaintiff can seek to prove causation by pointing to the record as a whole for evidence that suggests causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

After careful review of Count III, I am confident that Miss Urey has met her obligation, under our notice pleading standards, to provide the grounds of her entitlement to relief. She has alleged enough facts to raise a reasonable expectation that discovery could reveal evidence of the necessary elements of her § 1983 claim. Accordingly, I will deny the defendants' motion to dismiss Count III.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRI L. UREY, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 08-5346 |
| | : | |
| EAST HEMPFIELD TOWNSHIP, et al., | : | |
|     Defendants | : | |

## O R D E R

STENGEL, J.

AND NOW, this 3rd day of March, 2009, upon consideration of the defendants' motion to dismiss (Document #3), and the plaintiff's response thereto (Document #5), it is hereby ORDERED that the motion is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that:

1. The East Hempfield Police Department is DISMISSED as a defendant.

2. Count II is DISMISSED for failure to exhaust administrative remedies.

BY THE COURT:

_____
LAWRENCE F. STENGEL, J.